S13A0741. PITTS v. THE STATE.
(748 SE2d 426)

HINES, Presiding Justice.

Following the denial of her motion for new trial, Chanell Pitts appeals her convictions and misdemeanor sentences for violations in 2011 of OCGA § 20-2-690.1,[1] which provides for mandatory education for children between the ages of six and sixteen ("mandatory

---

[1] OCGA § 20-2-690.1 in effect in 2011 provided:

(a) Mandatory attendance in a public school, private school, or home school program shall be required for children between their sixth and sixteenth birthdays. Such mandatory attendance shall not be required where the child has successfully completed all requirements for a high school diploma.

(b) Every parent, guardian, or other person residing within this state having control or charge of any child or children during the ages of mandatory attendance as required in subsection (a) of this Code section shall enroll and send such child or

education statute"). Her sole challenge is to the constitutionality of

children to a public school, a private school, or a home study program that meets the requirements for a public school, a private school, or a home study program; and such child shall be responsible for enrolling in and attending a public school, a private school, or a home study program that meets the requirements for a public school, a private school, or a home study program under such penalty for noncompliance with this subsection as is provided in Chapter 11 of Title 15, unless the child's failure to enroll and attend is caused by the child's parent, guardian, or other person, in which case the parent, guardian, or other person alone shall be responsible; provided, however, that tests and physical exams for military service and the National Guard and such other approved absences shall be excused absences. The requirements of this subsection shall apply to a child during the ages of mandatory attendance as required in subsection (a) of this Code section who has been assigned by a local board of education or its delegate to attend an alternative public school program established by that local board of education, including an alternative public school program provided for in Code Section 20-2-154.1, regardless of whether such child has been suspended or expelled from another public school program by that local board of education or its delegate, and to the parent, guardian, or other person residing in this state who has control or charge of such child. Nothing in this Code section shall be construed to require a local board of education or its delegate to assign a child to attend an alternative public school program rather than suspending or expelling the child.

(c) Any parent, guardian, or other person residing in this state who has control or charge of a child or children and who shall violate this Code section shall be guilty of a misdemeanor and, upon conviction thereof, shall be subject to a fine not less than $25.00 and not greater than $100.00, imprisonment not to exceed 30 days, community service, or any combination of such penalties, at the discretion of the court having jurisdiction. Each day's absence from school in violation of this part after the child's school system notifies the parent, guardian, or other person who has control or charge of a child of five unexcused days of absence for a child shall constitute a separate offense. After two reasonable attempts to notify the parent, guardian, or other person who has control or charge of a child of five unexcused days of absence without response, the school system shall send a notice to such parent, guardian, or other person by certified mail, return receipt requested. Public schools shall provide to the parent, guardian, or other person having control or charge of each child enrolled in public school a written summary of possible consequences and penalties for failing to comply with compulsory attendance under this Code section for children and their parents, guardians, or other persons having control or charge of children. The parent, guardian, or other person who has control or charge of a child or children shall sign a statement indicating receipt of such written statement of possible consequences and penalties; children who are age ten years or older by September 1 shall sign a statement indicating receipt of such written statement of possible consequences and penalties. After two reasonable attempts by the school to secure such signature or signatures, the school shall be considered to be in compliance with this subsection if it sends a copy of the statement, via certified mail, return receipt requested, to such parent, guardian, other person who has control or charge of a child, or children. Public schools shall retain signed copies of statements through the end of the school year.

(d) Local school superintendents in the case of private schools or home study programs and visiting teachers and attendance officers in the case of public schools shall have authority and it shall be their duty to file proceedings in court to enforce this subpart.

(e) An unemancipated minor who is older than the age of mandatory attendance as required in subsection (a) of this Code section who has not completed all requirements for a high school diploma who wishes to withdraw from school

OCGA § 20-2-690.1.[2] For the reasons that follow, we affirm.

On January 31, 2012, Pitts was charged by accusation with nine separate counts of violation of OCGA § 20-2-690.1 in regard to her son's unexcused absences from school in August 2011. On May 29, 2012, she filed a "Plea in Bar; Motion to Dismiss Accusation; Motion to Declare O.C.G.A. 20-2-690.1 Unconstitutional," arguing that the statute violated due process and equal protection under the State and Federal Constitutions, and the doctrine of separation of powers under the State Constitution. The State Court of Jackson County rejected Pitts's constitutional claims and denied her motion. Following a bench trial on October 24, 2012, Pitts was found guilty of three of the charges and acquitted of the remaining counts. She was sentenced collectively to 90 days to be served on probation and fined $200.

---

shall have the written permission of his or her parent or legal guardian prior to withdrawing. Prior to accepting such permission, the school principal or designee shall convene a conference with the child and parent or legal guardian within two school days of receiving notice of the intent of the child to withdraw from school. The principal or designee shall make a reasonable attempt to share with the student and parent or guardian the educational options available, including the opportunity to pursue a general educational development (GED) diploma and the consequences of not having earned a high school diploma, including lower lifetime earnings, fewer jobs for which the student will be qualified, and the inability to avail oneself of higher educational opportunities. Every local board of education shall adopt a policy on the process of voluntary withdrawal of unemancipated minors who are older than the mandatory attendance age. The policy shall be filed with the Department of Education no later than January 1, 2007. The Department of Education shall provide annually to all local school superintendents model forms for the parent or guardian signature requirement contained in this subsection and updated information from reliable sources relating to the consequences of withdrawing from school without completing all requirements for a high school diploma. Such form shall include information relating to the opportunity to pursue a general educational development (GED) diploma and the consequences of not having earned a high school diploma, including lower lifetime earnings, fewer jobs for which the student will be qualified, and the inability to avail oneself of higher educational opportunities. Each local school superintendent shall provide such forms and information to all of its principals of schools serving grades six through twelve for the principals to use during the required conference with the child and parent or legal guardian.

[2] Pitts does not specify whether her challenge is to the statute in its present form or to the version in effect in 2011; however, she focuses upon aspects of the statute which remain unchanged since 2011. In 2012 the statute had some minor amendments: in subsection (c), "violates" was substituted for "shall violate,"; "of" was inserted preceding "not less than $25.00,"; the language ", or first-class mail. Prior to any action to commence judicial proceedings to impose a penalty for violating this subsection on a parent, guardian, or other person residing in this state who has control or charge of a child or children, a school system shall send a notice to such parent, guardian, or other person by certified mail, return receipt requested" was added; and "or first-class mail" was inserted following "return receipt requested." In subsection (d), "the Department of Education in the case of" was substituted for "or," and "The Department of Education shall coordinate with local school superintendents with respect to attendance records and notification for students in home study programs" was added following "enforce this subpart."

1. Pitts contends that the statute violates due process because it is impermissibly vague as it fails to adequately and fairly give notice of what conduct is forbidden in that the statute does not define the terms "excused" and "unexcused" in the case of school absences. See United States Const., Amend. XIV; 1983 Ga. Const., Art. I, Sec. I, Par. I.

In the context of a law which criminalizes certain behavior, due process requires that the law give a person of ordinary intelligence fair warning of the specific conduct which is forbidden or mandated; such a law may be challenged on the basis of vagueness if it fails to provide such notice or if the statute authorizes and encourages arbitrary and discriminatory enforcement. *Braley v. City of Forest Park*, 286 Ga. 760, 762 (1) (692 SE2d 595) (2010); *Santos v. State*, 284 Ga. 514, 514-515 (1) (668 SE2d 676) (2008). The mandate of due process is simply that the law give sufficient warning that people "may conduct themselves so as to avoid that which is forbidden." *Braley v. City of Forest Park*, supra at 762 (1), quoting *Smith v. State*, 285 Ga. 725, 726 (2) (681 SE2d 161) (2009). In considering the question of whether statutory notice satisfies the requirements of due process the statute may be considered in pari materia with other legislation and regulations. See *Richards v. Blackmon*, 233 Ga. 739 (1) (213 SE2d 638) (1975).

First, OCGA § 20-2-690.1 (c) provides in relevant part that:

> . . . Each day's absence from school in violation of this part after the child's school system notifies the parent, guardian, or other person who has control or charge of a child of five *unexcused days of absence* for a child shall constitute a separate offense. After two reasonable attempts to notify the parent, guardian, or other person who has control or charge of a child of five *unexcused days of absence* without response, the school system shall send a notice to such parent, guardian, or other person by certified mail, return receipt requested. . . . (Emphasis supplied.)

It is plain that the statute criminalizes "unexcused" absences. And, OCGA § 20-2-693 confirms that excused absences are exempt and that a violation of OCGA § 20-2-690.1 requires that the absences be without legal excuse:

> (a) Children during the ages of mandatory attendance as required in subsection (a) of Code Section 20-2-690.1 who are excused from attendance in public school by county or

independent school system boards in accordance with general policies and regulations promulgated by the State Board of Education shall be exempt from this subpart. The state board, in promulgating its general policies and regulations, shall take into consideration sickness and other emergencies which may arise in any school community.

(b) Children during the ages of mandatory attendance as required in subsection (a) of Code Section 20-2-690.1 who are excused from attendance at private schools or home study programs for sickness or emergencies or for other reasons substantially the same as the reasons for excused absences from attendance at public school authorized by state board policy pursuant to subsection (a) of this Code section shall be exempt from this subpart.

Furthermore, OCGA § 20-2-693 expressly provides that the classification of school absences as excused or not is to be further refined by policies and regulations promulgated by the State Board of Education. Indeed, the trial court specifically noted Department of Education Regulation 160-5-1-.10 which lists various circumstances in which an absence may be excused. Again, the requirement of due process is that the law give a person of ordinary intelligence fair warning of the conduct which is forbidden or mandated, and it is clear that OCGA § 20-2-690.1 punishes the legally unjustified failure to send a child for whom one is responsible to school. And, the trial court noted in Pitts's case that ultimately she was to be prosecuted for only those counts in the accusation for which she "wholly failed to provide any attempt whatsoever" to excuse her son's absences from school; consequently, as that court found, "no person of ordinary intelligence could reasonably believe that the wholesale failure to provide ANY attempt to excuse a child's absence could qualify as an 'excused' absence under any conceivable definition of the word." Pitts's due process challenge fails.

2. Pitts next asserts that OCGA § 20-2-690.1 violates equal protection because it treats similarly-situated people differently based on criteria wholly unrelated to the objective of the statute. See United States Const. Amend. XIV; Ga. Const. of 1983, Art. I, Sec. I, Par. II. Specifically, she urges that the statute read in conjunction with OCGA § 20-2-693 permits local school boards to establish differing guidelines with respect to what constitutes an "unexcused" absence from school.

Although Pitts has raised a challenge based upon the Equal Protection Clauses of both the State and Federal Constitutions, this Court will consider them as one because the protection provided in

the Equal Protection Clause of the Federal Constitution is coextensive with that provided in the Georgia Constitution. *Fair v. State*, 288 Ga. 244, 246 (1) (A) (702 SE2d 420) (2010). The level of scrutiny this Court is to apply is dependent upon the nature of the distinction drawn by the legislation at issue, and inasmuch as in this case neither a suspect class nor a fundamental right is implicated, the most lenient level of judicial review, the "rational basis" test is to apply.[3] *Harper v. State of Ga.*, 292 Ga. 557, 560 (1) (738 SE2d 584) (2013). Such test involves a two-prong evaluation, in which the claimant initially has to establish that he or she is similarly situated to members of the class who are being treated differently, and that there is no rational basis for such different treatment. Id. The claimant has the burden of proof as to both prongs because the statute under attack is presumptively valid. Id. And, Pitts has not carried her burden.

For equal protection purposes, criminal defendants are similarly situated if they are charged with the same crime. *Fair v. State*, supra at 246 (1) (A). However, even accepting that Pitts is situated similarly to others charged with violation of OCGA § 20-2-690.1, she raises only the possibility of different treatment under the statute. And, she fails to show that any such potential variation in application of the statute is without a rational basis. Id. at 248 (1) (A). Moreover, such statutory difference in treatment is not to be set aside if any state of facts reasonably may be conceived to justify it; if there is some rational basis for the classification, it does not offend constitutional safeguards merely because the classification is not made with mathematical nicety or because in practice it may result in some inequality. Id.

First, it is plain that OCGA § 20-2-690.1 is reasonably related to the legitimate governmental interest of ensuring that the children residing in Georgia are afforded the opportunity of an education. Second, as noted by the trial court, there are state-wide regulations which establish minimum requirements. But, differences in the circumstances and resources of local school boards and the residents of each school district require that the varying school districts be allowed some flexibility in determining what constitutes an unexcused absence from school so as to trigger possible application of the

---

[3] Pitts does not claim that her son failed to attend the public school because she wanted him to be educated at a private school or at home or because she objected to his attendance based on religious or other rights protected by the First Amendment. Compare *Wisconsin v. Yoder*, 406 U. S. 205 (92 SCt 1526, 32 LE2d 15) (1972); *Pierce v. Society of the Sisters of the Holy Names of Jesus and Mary*, 268 U. S. 510 (45 SCt 571, 69 LE 1070) (1925); *Brooks v. Parkerson*, 265 Ga. 189, 191 (454 SE2d 769) (1995).

sanctions of OCGA § 20-2-690.1. Simply, the statute has not been shown to run afoul of constitutional equal protection.

3. Finally, Pitts fails in her claim that OCGA § 20-2-690.1 is unconstitutional because it improperly delegates legislative power to determine what acts constitute a crime to both the executive branch and local school boards in violation of the doctrine of separation of powers. See Ga. Const. of 1983, Art. I, Sec. II, Par. III. The statute itself provides the elements of the crime, and makes it unlawful for one in control or charge of a child of the specified age to fail to ensure that the child attends a public, private, or home school program. Therefore, the General Assembly has defined the crime. However, this Court recognizes that the General Assembly cannot be expected to "find all facts and make all applications of legislative policy," and consequently, delegation of legislative authority is permissible when it is accompanied by sufficient guidelines for the delegatee. *Dept. of Transp. v. City of Atlanta*, 260 Ga. 699, 703 (1) (398 SE2d 567) (1990). This is so because in such instance the delegatee is not performing a legislative function, that is, it is not making a purely legislative decision, but is acting in an administrative capacity by direction of the legislature. Id. As has been discussed, OCGA § 20-2-690.1 is to be considered in conjunction with OCGA § 20-2-693, which does provide realistic guidance for enforcement of the penalty provisions of OCGA § 20-2-690.1. OCGA § 20-2-693 directs that the State Board of Education, in promulgating its general policies and regulations, take into consideration "sickness and other emergencies which may arise in any school community." By their very nature, such guidelines must be flexible in order to account for the varying exigent circumstances which might bear on school attendance. There is no violation of the Georgia separation-of-powers doctrine.

*Judgments affirmed. All the Justices concur.*

DECIDED SEPTEMBER 9, 2013.

*Donna A. Seagraves, Carla D. Brock*, for appellant.
*Donald E. Moore, Solicitor-General, Donald L. Hudson, Jr., Assistant Solicitor-General*, for appellee.