FILED
United States Court of Appeals
Tenth Circuit

June 23, 2017

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ROBERT W. ARNOLD,

      Defendant - Appellant.

No. 16-6089
(D.C. No. 5:14-CR-00347-D-3)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT***
_____

Before **HARTZ**, **MATHESON**, and **MORITZ**, Circuit Judges.
_____

Robert Arnold appeals his convictions for wire fraud and conspiracy

to commit wire fraud, asserting that (1) the district court erred in

admitting three exhibits into evidence at trial and (2) insufficient evidence

supports his convictions. Because we conclude that the district court didn't

abuse its discretion in admitting the challenged exhibits and that the

government presented sufficient evidence to support the convictions, we

affirm.

_____

    * This order and judgment isn't binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. But it
may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R.
32.1.

# I

The government charged Arnold, his father (Richard Arnold Sr.), and his brother (Ricky Arnold) with wire fraud and conspiracy to commit wire fraud.[1] *See* 18 U.S.C. §§ 1343, 1349. The government also charged Arnold's mother (Robyn Arnold) with conspiracy to commit wire fraud.

In support, the indictment alleged that the Arnolds ran a scheme in which they encouraged individuals to participate in the "United Auto Buyers Co-op Association" (the Association). R. vol. 1, 28. The Association, in turn, would purportedly make all loan payments on the participants' new vehicles through the "CECU Trust"—but only if the victims first relinquished their financing-incentive rebates to the Arnolds. *Id.* According to the government's theory of the case, the Arnolds told potential victims that the rebates would generate sufficient interest through investments to make the victims' loan payments. But while the Arnolds made some payments, they eventually stopped. Instead, Robyn used funds from the CECU Trust bank accounts for the Arnolds' own personal expenses.

Faced with these allegations, Ricky and Robyn pleaded guilty to conspiracy to commit wire fraud, and Richard pleaded guilty to wire fraud

---

[1] To avoid confusion, we refer to defendant Robert Arnold as "Arnold" and to his family members by their first names. We sometimes refer to Arnold and his family members collectively as "the Arnolds."

and conspiracy to commit wire fraud. But Arnold proceeded to trial. And after a 3-day trial, the jury convicted Arnold of wire fraud and conspiracy to commit wire fraud. Arnold now appeals.

## II

On appeal, Arnold argues that (1) the district court abused its discretion in admitting three exhibits at trial; and (2) insufficient evidence supports his convictions.

## A

Arnold asserts that the district court erroneously admitted Exhibits 401, 420, and 510 at trial.[2] We review evidentiary rulings for an abuse of

---

[2] Arnold raises several challenges to these exhibits for the first time on appeal. For instance, he asserts that (1) even if Exhibit 401 meets the threshold requirements for authentication as a business record under Federal Rule of Evidence 902(11), it violates the Confrontation Clause; (2) the district court improperly admitted Exhibit 420 because the sponsoring witness lacked sufficient personal knowledge, under Federal Rule of Evidence 602, "that the evidence was complete," Aplt. Br. 48; (3) the district court erred in admitting Exhibit 420 under Federal Rules of Evidence 1002 and 1004; and (4) the district court erred in admitting Exhibit 510 because the sponsoring witness's testimony was equivocal. But Arnold didn't raise these arguments below. And he makes no effort to satisfy our plain-error test on appeal. Accordingly, we decline to address these arguments. *See McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010) (noting that party advancing forfeited argument on appeal can only prevail by establishing plain error); *see also Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) ("[T]he failure to argue for plain error and its application on appeal—surely marks the end of the road for an argument for reversal not first presented to the district court.").

discretion. *United States v. Blechman*, 657 F.3d 1052, 1063 (10th Cir. 2011). Under this standard, we won't disturb a district court's decision unless we have "a definite and firm conviction that the lower court has made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *United States v. Gordon*, 710 F.3d 1124, 1156 (10th Cir. 2013) (quoting *United States v. Chanthadara*, 230 F.3d 1237, 1248 (10th Cir. 2000)).

**1**

Arnold first argues that the district court improperly admitted Exhibit 401, which is the application generated when Georgia and John Maynard[3] applied for vehicle financing. In addition to listing the Maynards' gross salaries, Exhibit 401 contains some handwritten notations: (1) the handwritten words "[U]nited [A]uto [B]uyers Co-op" next to John's "Other Salary" of $60,000, and (2) an arrow pointing from John's "Other Salary" to another handwritten note that simply says, "Robert Arnold." Supp. R. vol. 1, 131.

The district court ruled that Exhibit 401 was admissible as a properly authenticated business record under Federal Rule of Evidence

Instead, we focus our inquiry on the claims of error that Arnold has properly preserved.

[3] We refer to Georgia and John Maynard separately by their first names and collectively as "the Maynards."

4

902(11). But according to Arnold, the exhibit was inadmissible because the government failed to comply with Federal Rule of Evidence 901(a). *See* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").

We disagree. Arnold conceded at trial that Exhibit 401 is self-authenticating under Rule 902. And when evidence is self-authenticating under Rule 902, it necessarily satisfies Rule 901(a). *See* 31 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 7134 (2000) ("[I]f an item of evidence is within one of the [categories of items listed in Rule 902], the authentication requirement of Rule 901(a) is satisfied."); *see also United States v. Jenkins*, 540 F. App'x 893, 900-01 (10th Cir. 2014) (unpublished) (rejecting defendant's argument that evidence wasn't authenticated under Rule 902(11) because custodian didn't testify from personal knowledge at trial). Accordingly, we reject this argument.

We likewise reject Arnold's argument that the district court erred in admitting Exhibit 401 because its handwritten notation linking Arnold to the Association was "unduly prejudicial." Aplt. Br. 44; *see* Fed. R. Evid.

403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice.").

We agree with Arnold that the handwritten notation might support an inference connecting Arnold to the Association. But Arnold doesn't explain how such an inference is unfair. *See United States v. Rodriguez*, 192 F.3d 946, 951 (10th Cir. 1999) (explaining that evidence is only unfairly prejudicial if it increases the risk of conviction by adversely affecting the jury's attitude toward the defendant in a manner unrelated to his guilt or innocence). Thus, Arnold has failed to show that the district court abused its "considerable discretion" in admitting Exhibit 401. *United States v. MacKay*, 715 F.3d 807, 839 (10th Cir. 2013) (quoting *United States v. Cerno*, 529 F.3d 926, 936 (10th Cir. 2008)).

**2**

Next, Arnold argues that the district court abused its discretion in improperly admitting Exhibit 420. Exhibit 420 is a compilation of screenshots that Georgia captured from John's cellphone and then printed. The resulting images depict text messages exchanged between John and Arnold.

At trial, John testified that he exchanged text messages with Arnold in association with the CECU Trust and that he saved "[m]ost" of those text messages on his phone. R. vol. 3, 206. John also testified that he

"th[ought]" Georgia captured images of the text messages and that together, the Maynards then provided those images to law enforcement. *Id.*

Arnold asserts that the government failed to properly authenticate Exhibit 420 under Rule 901 because John testified that he wasn't sure whether the text messages Georgia printed included *all* of the messages John exchanged with Arnold. Thus, Arnold reasons, no evidence supported "a finding that [Exhibit 420] was what the proponent claimed it was, i.e., a full and complete picture of the text messages between" the two men. Aplt. Br. 48.

But to authenticate a particular item, its proponent must simply "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). And "[w]hen 'evidence is unique, readily identifiable and relatively resistant to change, th[at] foundation need only consist of testimony that the evidence is what its proponent claims.'" *United States v. Yeley-Davis*, 632 F.3d 673, 683 (10th Cir. 2011) (quoting *United States v. Johnson*, 977 F.2d 1360, 1367 (10th Cir. 1992)).

Here, the government never represented at trial that the exhibit contained all of the text messages between John and Arnold. Instead, the government properly authenticated Exhibit 420 as a document that

7

displayed Georgia's screen-shots of the text messages that John saved on his phone. Thus, the district court didn't abuse its discretion in admitting Exhibit 420.

**3**

Arnold also argues that the district court abused its discretion in admitting Exhibit 510. Like Exhibit 420, Exhibit 510 comprises text messages that Arnold exchanged with a victim—this time, John Haley. But unlike Exhibit 420, Exhibit 510 doesn't contain screen-shots of the text messages themselves; instead, Haley explained at trial that he copied the contents of the text messages from his phone and pasted those contents into a separate document.

Arnold asserts that the government failed to properly authenticate Exhibit 510 under Rule 901 because Haley "cut and pasted the text messages" into another document. Aplt. Br. 51. According to Arnold, the resulting document contained insufficient distinctive identifiers—e.g., dates, phone numbers, and customary text message format—to satisfy Rule 901's authentication requirement.

Rule 901 provides that the party offering a piece of evidence can establish that the evidence "is what the proponent claims it is" simply by presenting the testimony of a witness with knowledge that the "item is what it is claimed to be." Fed. R. Evid. 901(a), (b)(1). Here, Haley testified

8

that he received the original text messages from Arnold and that he personally copied the contents from his text messages into another document. Haley also testified as to the general time frame and the order of events that occurred when he received particular messages and groups of messages. Haley's testimony satisfied Rule 901.  Moreover, whether the jury believed that Haley accurately copied and pasted the contents of the text messages goes to the weight of the evidence, not its admissibility. *Cf. Yeley-Davis*, 632 F.3d at 683  (noting that deficiencies in chain of custody "go to the weight of the evidence, not its admissibility; once admitted, the jury evaluates the defects and, based on its evaluation, may accept or disregard the evidence" (quoting *United States v. Smith*, 534 F.3d 1211, 1225 (10th Cir. 2008))). Thus, the district court didn't abuse its discretion in admitting Exhibit 510.[4]

**B**

Next, Arnold argues that the government failed to present sufficient evidence to support his convictions for wire fraud and conspiracy to commit wire fraud. We review the sufficiency of the evidence de novo,

---

[4] In addition to challenging the district court's individual evidentiary rulings, Arnold also asserts that the cumulative impact of these alleged errors requires reversal. But because we conclude that the district court didn't err in admitting any of the challenged exhibits, this argument necessarily fails. *See Hanson v. Sherrod*, 797 F.3d 810, 853 (10th Cir. 2015) ("[W]e cannot engage in a cumulative error analysis absent at least two errors.").

asking "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Sharp*, 749 F.3d 1267, 1275 (10th Cir. 2014) (quoting *United States v. Serrato*, 742 F.3d 461, 472 (10th Cir. 2014)).

## 1

To convict Arnold of conspiracy, the government had to prove that "(1) two or more persons agreed to violate the law, (2) the defendant knew the essential objectives of the conspiracy, (3) the defendant knowingly and voluntarily participated in the conspiracy, and (4) the alleged coconspirators were interdependent." *United States v. Fishman*, 645 F.3d 1175, 1186 (10th Cir. 2011) (quoting *United States v. Baldridge*, 559 F.3d 1126, 1136 (10th Cir. 2009)). Here, Arnold argues that the government failed to prove the second, third, and fourth of these elements.

Arnold first asserts that we must reverse because there "was no direct evidence that [he] knew the essential objective[] of the conspiracy, which was to fraudulently dupe victims out of their rebate checks by promising free vehicles under the car program." Aplt. Br. 34.

But the government isn't required to present direct evidence of the defendant's knowledge of the conspiracy's objective or of the defendant's knowing and voluntary participation in the conspiracy. Instead,

10

circumstantial evidence will suffice. *See United States v. Small*, 423 F.3d 1164, 1182-83 (10th Cir. 2005). Here, when viewed in the light most favorable to the government, sufficient circumstantial evidence proves that Arnold knew the essential objectives of the conspiracy.

First, while Robert initially purported to be concerned about Haley's late payments, he eventually stopped responding to Haley's text messages altogether. Similarly, Arnold initially regularly communicated with Rhonda Taylor and the Maynards, but after some missed payments, Robert simply referred them to Richard. This failure to respond supports an inference that Arnold understood that the scheme was fraudulent. *See United States v. Walsh*, 6 F. App'x 781, 786 (10th Cir. 2001) (unpublished) (noting that failure to respond to victims' requests for refunds is probative of fraudulent intent).

Second, the jury could conclude that Arnold couldn't plausibly believe that the victims' financing rebates would actually generate enough interest to make loan payments for the life of their loans. For instance, Haley financed $35,213 of his vehicle's purchase price. His monthly loan payments were $601.93. And he received a $7,000 rebate, which he turned over to the CECU Trust. For that rebate to cover all of Haley's monthly vehicle payments, the annual return on investment would have to be over one hundred percent—a highly implausible scenario. *See United States v.*

11

*Dazey*, 403 F.3d 1147, 1163 (10th Cir. 2005) (holding that while the defendant may have believed promises that turned out to be false, jury was entitled to conclude otherwise in light of "undeniable implausibility of these representations").

This circumstantial evidence of Arnold's knowledge of the fraudulent nature of the scheme distinguishes this case from *United States v. Rahseparian*, 231 F.3d 1257 (10th Cir. 2000), which Arnold cites. In *Rahseparian*, we held that evidence of the defendant's mere involvement in a fraudulent scheme run by his family members, without more, didn't prove the defendant's specific intent to commit fraud. *Id.* at 1261-64. But here, as discussed above, sufficient circumstantial evidence indicates that Arnold had knowledge of the scheme and its fraudulent nature.

Next, Arnold argues that the government presented insufficient evidence to prove that he "knowingly and intentionally participated in the scheme to defraud." Aplt. Br. 39. Specifically, Arnold argues that "insufficient direct or circumstantial evidence . . . indicated coordination and concert of action." *Id.*

We disagree. The government presented evidence that Arnold and Ricky worked together to structure financing deals for the Maynards' vehicles. Similarly, Ricky told Taylor that Arnold would handle details surrounding her purchase. Arnold also handled most steps of Haley's

12

vehicle purchase. Arnold even purchased a vehicle of his own through the scheme, and the CECU Trust account continued making payments on Arnold's vehicle's loan after Arnold knew the account had stopped making payments on Taylor's, Haley's, and the Maynards' loans. This evidence, combined with the circumstantial evidence indicating that Arnold knew of the fraudulent nature of the scheme, is sufficient to prove Arnold's knowing participation in the fraudulent scheme.

Finally, Arnold makes a passing suggestion that the government presented insufficient evidence to prove coordination and concert of action. But as discussed above, the government presented evidence that Arnold cooperated with Ricky to structure financing deals for the Maynards. Thus, this argument also fails. Accordingly, we conclude that the government presented sufficient evidence to support Arnold's conviction for conspiracy to commit wire fraud.

## 2

Next, Arnold challenges the sufficiency of the evidence supporting his conviction for wire fraud. To convict Arnold of that offense, the government had to prove "(1) [he] participated in a scheme to defraud; (2) [he] intended to defraud; and (3) a use of an interstate wire in furtherance of the fraudulent scheme." *United States v. Caldwell*, 560 F.3d 1214, 1218 (10th Cir. 2009) (quoting *United States v. Turner*, 551 F.3d

13

657, 664 (7th Cir. 2008)).

Arnold doesn't suggest the government presented insufficient evidence to prove he used an interstate wire. Instead, he argues only that the government failed to present sufficient evidence of the first and second elements of wire fraud. But in support, Arnold simply renews the same unsuccessful arguments that he advances in challenging the sufficiency of the evidence supporting his conspiracy conviction. Because the same evidence that proves Arnold knew the essential objectives of the conspiracy to commit wire fraud and Arnold's knowing and voluntary participation in that conspiracy also proves that Arnold participated in a scheme to defraud and intended to defraud, we reject this argument.

*   *   *

Because (1) the district court didn't abuse its discretion in admitting Exhibits 401, 420, and 510; and (2) the government presented sufficient evidence to support Arnold's convictions for wire fraud and conspiracy to commit wire fraud, we affirm.

Entered for the Court


Nancy L. Moritz
Circuit Judge

14