302 Ga. 389
FINAL COPY

S17A0828. PIERCE v. THE STATE.

BOGGS, Justice.

Appellant Matthew Caleb Pierce was tried before a jury and found guilty on six counts of aggravated child molestation, two counts of child molestation, two counts of sexual battery, and one count each of sexual exploitation of a child, distribution of Hydromorphone, and distribution of Alprazolam.[1] The crimes involved acts with three teenage boys, B. M., M. T., and D. D. Pierce filed his appeal in the Court of Appeals, which transferred the case to this Court because it raises the issue of the constitutionality of a statute, an issue over

---

[1] The crimes occurred between June 25 and July 9, 2011. On July 16, 2013, a Houston County grand jury indicted Pierce on charges of aggravated child molestation, child molestation, sexual battery, sexual exploitation of a child, distribution of Hydromorphone and distribution of Alprazolam. Following a November 2014 jury trial, Pierce was found guilty on all counts with the exception of one count of child molestation for which he was acquitted, and one count of sexual exploitation of a child that was nolle prossed. He was sentenced to life in prison, with 30 years to serve and the remainder of the life sentence on probation. The court merged one of the sexual battery counts. Pierce's motion for new trial was filed on December 30, 2014, amended on August 17, 2015, and denied on March 21, 2016. His notice of appeal was filed on April 12, 2016. This case was docketed in this Court for the April 2017 term and orally argued on April 17, 2017.

which this Court has exclusive jurisdiction. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II (1). In addition to his constitutional claims, Pierce argues that the trial court erred in admitting a videotaped interview of B. M. and photographs of text messages from D. D.'s cell phone. For the following reasons, we hold that all of Pierce's claims are without merit, and therefore affirm.

Viewed in the light most favorable to the verdict, the evidence showed that in June and July of 2011, B. M., M. T., and D. D., then all 14 years old, "hung out" with Pierce, who was then 31 years old, and drank beer and liquor at Pierce's apartment. Pierce lived in the same apartment building as B. M. On one occasion when Pierce invited the teens into his apartment and offered them liquor and beer, B. M. "started not to feel good" and asked Pierce if he "had anything to give [him]." Pierce gave B. M. "something" and all B. M. remembered was passing out on Pierce's couch until later in the evening.

D. D. testified that Pierce gave him and M. T. a pill that he believed was Xanax, and on another occasion, he texted Pierce a picture of his penis in order "to get pills." The State admitted pictures of the text messages from D. D.'s cell phone including the picture that D. D. testified he exchanged with Pierce in order to get the pills.

2

M. T. testified that he met Pierce through D. D., and that D. D. told him Pierce could get them "free beer and Xanax." M. T. explained further that he spent two nights at Pierce's apartment in July 2011. During that time, Pierce "started, . . . . coming on to [M. T.]," and when M. T. asked about getting Xanax, Pierce told him that he did not give Xanax pills away, but would exchange them for pictures or a "sexual act." M. T. explained that he was reluctant to agree to the exchange, but "Xanax makes you do things you'd never do sober." On one of the nights M. T. stayed at Pierce's apartment, Pierce gave M. T. a handful of Xanax pills, pulled out his penis, and fondled M. T.'s penis. After M. T. and Pierce performed oral sex on one another, Pierce retrieved more Xanax pills for M. T. from a safe in his bedroom.

When M. T. later left Pierce's apartment, he was stopped by a courtesy officer from the apartment complex. The officer noticed that M. T.'s speech was slurred and that he smelled of an alcoholic beverage. After asking M. T. a few questions, the officer asked M. T. for consent to search his person. M. T. consented, and in his pocket the officer found Hydromorphone and Alprazolam (Xanax) pills that M. T. told the officer he obtained from Pierce. M. T. explained to police that Pierce gave him pills in exchange for M. T. performing

3

oral sex on Pierce.

Investigators subsequently interviewed all three teens and conducted a search of Pierce's apartment where they found prescription bottles of Hydromorphone and Alprazolam, some empty and some containing pills, in a safe in the closet of his bedroom. B. M. told police in a videotaped statement that he and Pierce engaged in oral and anal sex while at Pierce's apartment, although at trial he testified he did not remember the sex acts.

Following the presentation of this evidence, the jury found Pierce guilty of aggravated child molestation for performing both anal and oral sodomy on B. M. and having B. M. perform such acts on him; aggravated child molestation for performing oral sodomy on M. T. and having M. T. perform oral sodomy on him; child molestation and sexual battery for placing his hands on B. M.'s penis and M. T.'s penis; sexual exploitation of a child for enticing D. D. to take a picture of his penis and send the picture to Pierce; and distribution of Hydromorphone and Alprazolam to M. T.

1. Pierce argues that the trial court erred in allowing the admission of B. M.'s videotaped interview. "We review the trial court's decision to admit evidence for an abuse of discretion." (Citation omitted.) Bolling v. State, 300

4

Ga. 694, 698 (2) (797 SE2d 872) (2017).

When first questioned at trial about this statement to police, B. M. testified that he did not remember talking to police, even after having watched his videotaped statement about a week before trial. The prosecutor asked that B. M. be allowed to watch his videotaped interview again to refresh his memory. After discussion with both counsel and further testimony by B. M. that he did not recall what happened on the occasion he was in Pierce's bedroom, the trial court allowed B. M. to watch his videotaped interview outside the presence of the jury.

When B. M. returned to the witness stand, he testified that he remembered going to Pierce's apartment and being in his bedroom but did not remember what happened in the bedroom. The prosecutor then moved for admission of the videotaped interview pursuant to OCGA § 24-8-803 (5), past recollection recorded. In establishing the foundation for the video's admission, B. M. confirmed that he was the person in the video, testified that he remembered giving the videotaped statement to police, that he had knowledge as to what he was talking about in the video, and that when he gave the statement to police, the things he discussed were fresh in his memory. B. M. stated further that he

5

told the truth when he gave the statement. The trial court ruled that it would allow the jury to watch B. M.'s videotaped interview, and it was then played for the jury.

(a) Pierce argues that B. M.'s videotaped statement was not admissible under the past recollection recorded exception to the hearsay rule because B. M. was "a reluctant witness who did not want to testify," and the purpose of the exception is to assist witnesses who genuinely cannot remember events previously recorded. A "recorded recollection" under the applicable exception to the hearsay rule is defined as:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but shall not itself be received as an exhibit unless offered by an adverse party[.]

OCGA § 24-8-803 (5). This Code section mirrors Federal Rule of Evidence 803 (5). "And where the new Georgia rules mirror their federal counterparts, it is clear that the General Assembly intended for Georgia courts to look to the federal rules and how federal appellate courts have interpreted those rules for

guidance." <u>Parker v. State</u>, 296 Ga. 586, 593 (3) (a) (769 SE2d 329) (2015).[2]

An Eleventh Circuit Court of Appeals case presents facts similar to those adduced here. In <u>United States v. Jones</u>, 601 F3d 1247 (11th Cir. 2010), the witness "lacked 'clear and distinct' recollection in (her) response to the question(s)." Id. at 1262 (V) (A). Once she viewed her videotaped statement outside the presence of the jury, and was asked if she then remembered more than before she watched the video, the witnessed responded "I remember what was just said." Id. Nevertheless, the appellate court held that the trial court did not abuse its discretion in allowing the videotape to be played for the jury where the witness affirmed that the things she said in the video were true and accurate to the best of her knowledge, that it was "[her] talking" on the video, and that her memory was better then. Id.

Here, after viewing the videotaped statement at trial, B. M. stated that he was the person in the video, he remembered giving the statement, he had knowledge as to what he was talking about in the video, he told the truth when he gave the statement, and the things he discussed were fresh in his memory

---

[2] The same is true for our consideration of OCGA §§ 24-4-403 and 24-4-404 in Divisions 1 (c) and (d), and OCGA § 24-4-901 in Division 2 (a). See, e.g., <u>Brewner v. State</u>, 302 Ga. 6, 12 (III) (804 SE2d 94) (2017).

7

then. This was sufficient to establish under OCGA § 24-8-803 (5) that the videotaped statement concerned a matter about which B. M. once had knowledge but at trial had insufficient recollection, which was made or adopted when the matter was fresh in his memory, and which correctly reflected his knowledge. The trial court therefore did not abuse its discretion in allowing the admission of this evidence. See Jones, supra.

(b) Pierce also argues that the admission of B. M.'s videotaped statement was a violation of the Confrontation Clause, because he was effectively denied any opportunity to cross-examine B. M. in light of the teen's claim of no memory of the sexual offenses. But the

> Sixth Amendment guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. Kentucky v. Stincer, 482 U. S. 730, 739 (107 SCt 2658, 2664, 96 LE2d 631) (1987). . . . Ordinarily a witness is regarded as subject to cross-examination when he is placed on the stand, under oath, and responds willingly to questions. United States v. Owens, 484 U. S. 554, 556, 561 (108 SCt 838, 841, 844, 98 LE2d 951) (1988).

(Punctuation omitted; emphasis in original.) Jones, supra, 601 F3d at 1263 (V) (B). Although B. M. stated that he did not remember what occurred while he was in Pierce's bedroom, he recalled several other details about the nature of his

8

relationship with Pierce and his presence in Pierce's apartment. The record also reveals that after B. M. watched his videotaped statement at trial, he testified that he recalled giving the statement to police and that he told the truth in the statement. However, defense counsel posed no questions concerning this testimony. Counsel's cross-examination of B. M. involved only questions about B. M. speaking to his mother during a lunch break in the trial and whether B. M. told the truth when he testified "before lunch that [he] didn't remember." B. M. was present at trial and available for cross-examination. There was no violation of Pierce's right of confrontation here.

(c) Pierce argues that portions of the videotaped interview contained evidence of his character inadmissible under OCGA § 24-4-404 ("Rule 404"), and that it was unfairly prejudicial and therefore also inadmissible under the balancing test of OCGA § 24-4-403 ("Rule 403"). However, Pierce did not specifically object on these grounds prior to the videotape being played for the jury. See OCGA § 24-1-103 (a) (1) (no error in rulings on admission of evidence unless timely objection is made stating the specific ground of objection). We therefore review the trial court's admission of this evidence for

9

plain error.[3] OCGA § 24-1-103 (d); see <u>Lupoe v. State</u>, 300 Ga. 233, 245 (8) (794 SE2d 67) (2016).

Pierce argues that B. M.'s statement could not be admitted to prove Pierce's character and that the State failed to provide the required notice under OCGA § 24-4-404 (b). Pierce complains that in B. M.'s statement to police, he mentioned that Pierce provided a controlled substance to D. D. and B. M. when the indictment charged him only with distributing to M. T. However, B. M.'s statement was not admitted as evidence of other crimes or wrongs under Rule 404 (b), but as evidence of the crimes against B. M.[4] And the mention of another bad act within B. M.'s statement is admissible without notice under Rule 404 (b) as a circumstance immediately surrounding the charged crime. See <u>Williams v.</u>

---

[3] The standard for plain error review of rulings on evidence is that there must be an error or defect that has not been affirmatively waived by the appellant, the legal error is clear or obvious, the error must have affected the appellant's substantial rights, and if the aforementioned three requirements are satisfied, the appellate court has the discretion to remedy the found error, but should do so only if the error seriously affected the fairness, integrity or public reputation of the judicial proceedings; consequently, beyond showing a clear or obvious error, the appellant must affirmatively show that the error probably did affect the outcome below. <u>State v. Kelly</u>, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011).

[4] Pierce does not argue here and did not argue below that the statement should have been redacted to remove the references to his distribution of a controlled substance to B.M. and D.D. In fact, when the trial court ruled that it would allow the playing of the videotape for the jury, trial counsel insisted that the State was required to play the videotape in its entirety.

10

State, 302 Ga. 474, 484 (IV) (d) (807 SE2d 350) (2017). There was therefore no error here, much less plain error, in the admission of the videotape on this ground.

(d) Finally, Pierce argues that B. M.'s videotaped statement was inadmissible under the balancing test of OCGA § 24-4-403. He asserts that it "undeniably and unfairly aroused the jury's emotions of sympathy for B. M.," who sobbed during the video while describing the sexual acts between himself and Pierce.

"'[R]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. And "[r]elevant direct evidence of a crime charged is always admissible unless it falls under a rule of exclusion." (Citations omitted.) United States v. Troya, 733 F3d 1125, 1131 (II) (A) (11th Cir. 2013). OCGA § 24-4-403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." "Unfair prejudice" under this

11

rule "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." (Citations and punctuation omitted.) United States v. Smalls, 605 F3d 765, 787 (II) (C) (10th Cir. 2010). We have held that this rule of exclusion is "an extraordinary remedy which the courts should invoke sparingly, and the balance should be struck in favor of admissibility." (Citation and punctuation omitted.) Carter v. State, 302 Ga. 200, 203 (2) (a) (805 SE2d 839) (2017). "The 'major function' of Rule 403 is to 'exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" (Citation and punctuation omitted.) Hood v. State, 299 Ga. 95, 103 (4) (786 SE2d 648) (2016). B. M.'s statement to police was relevant as evidence of the crimes charged. And the highly probative value of this evidence, the only direct evidence of the sex acts Pierce committed against B. M., outweighed any danger of unfair prejudice. The videotaped statement was therefore admissible under the balancing test of OCGA § 24-4-403.

2. Pierce contends that the court erred in admitting the photographs of text messages from the screen of D. D.'s cell phone. He argues that this evidence was not properly authenticated, was in violation of the best evidence rule, and

was improper character evidence.

(a) With regard to authentication, Pierce asserts that the State failed to link him to the pictures of the text messages on D. D.'s phone.  Pierce argues that the State did not introduce his cell phone records, he denied sending the messages, and no one testified that they observed him send them.

At issue here is the authentication of a photograph of the display on an electronic device. OCGA § 24-9-901 (a) provides: "The requirement of authentication or identification as a condition precedent to admissibility shall be satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." An example of authentication conforming to the requirements of this subsection is the "[t]estimony of a witness with knowledge that a matter is what it is claimed to be[.]"  OCGA § 24-9-901 (b) (1). We have held that documents from electronic sources "are subject to the same rules of authentication as other more traditional documentary evidence and may be authenticated through circumstantial evidence." (Citation and punctuation omitted.) Cotton v. State, 297 Ga. 257, 259 (3) (773 SE2d 242) (2015). As explained by Professor Milich,

[w]ith all electronic sources of information there often are two

13

authentication issues: what computer or other digital device generated the communication and second, who was using the device at that time. Although there may exist evidence that a specific phone sent a certain text message, that does not prove who used the phone . . . . Every form of electronic communication can be "spoofed," "hacked," or "forged." But this does not and can not mean that courts should reject any and all such communications. Indeed the vast majority of these communications are just as they appear to be — quite authentic. The goal is to supply sufficient, nonhearsay evidence as the identity of the source such that a reasonable factfinder could conclude that the evidence is what it is claimed to be.

Paul S. Milich, Georgia Rules of Evidence § 7:6, at 194 (2017-2018).

The State introduced a sheriff's lieutenant who testified that he was not able to conduct a forensic exam of D. D.'s cell phone because it "was not compatible with any of the software we had at the time for cell phone forensics." Instead, he used a digital camera to photograph what was shown on the screen of the phone. The lieutenant explained that the images were a fair and accurate representation of what appeared on D. D.'s cell phone screen. Pierce denied sending D. D. the text messages shown in the photographs, but testified that the phone number shown in D. D.'s cell phone under his name was the number assigned to one of four cell phones for his business, Matthew Caleb Salon, and that family members or anyone connected to his business could have used the

14

cell phone. D. D. testified that the phone number shown for the text messages he received was Pierce's phone number and that he exchanged several text messages with Pierce. When asked how he knew that the phone number belonged to Pierce, he explained that he received the phone number from one of the other teens and in one of the messages he received from the number "it specifically says, Hey, it's Caleb [Pierce]." And, the text messages were consistent with D. D.'s and M. T.'s testimony that Pierce offered them "pills" in exchange for texting pictures of their genitals or sex acts.

The evidence presented here was sufficient to support a finding that the photographs are what they claim to be, text messages between D. D. and Pierce. The trial court therefore did not abuse its discretion in concluding that they were properly authenticated. See United States v. Arnold, 696 Fed. Appx. 903 (II) (A) (2) (10th Cir. 2017) (trial court did not abuse its discretion in admitting screen shots of text messages between defendant and witness who testified concerning the messages exchanged); United States v. Ramirez, 658 Fed. Appx. 949, 952 (II) (A) (11th Cir. 2016) (court did not abuse its discretion in allowing admission of photographs of text messages when witness testified they were text messages between her and the defendant, law enforcement agent was present for some of

15

the text messages between them, and the subscriber information listed defendant as the user for the phone number).

(b) Pierce argues that the admission of the photographs of the text messages violated the "best evidence" rule. See OCGA §§ 24-10-1002, 24-10-1003, 24-10-1004.[5] He contends that there was no evidence that D. D.'s phone had been lost or destroyed, so the State should have been made to produce the original phone rather than photographs from the screen, and that the evidence did not meet the exception in OCGA § 24-10-1004 because a genuine question was raised as to the authenticity of the original.

"The purpose of the best evidence rule is to prevent inaccuracy and fraud

---

[5] OCGA § 24-10-1002 provides: "To prove the contents of a writing, recording, or photograph, the original writing, recording, or photograph shall be required." OCGA § 24-10-1003 provides: "A duplicate shall be admissible to the same extent as an original unless: (1) A genuine question is raised as to the authenticity of the original; or (2) A circumstance exists where it would be unfair to admit the duplicate in lieu of the original." And OCGA § 24-10-1004 provides:

> The original shall not be required and other evidence of the contents of a writing, recording, or photograph shall be admissible if: (1) All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; (2) No original can be obtained by any available judicial process or procedure; (3) At a time when an original was under the control of the party against whom offered, that party was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and that party does not produce the original at the hearing; or (4) The writing, recording, or photograph is not closely related to a controlling issue.

16

when attempting to prove the contents of a writing." (Citation and punctuation omitted.) United States v. Trotter, 837 F3d 864, 867 (II) (8th Cir. 2016). OCGA § 24-10-1001 (3) provides that "original" for purposes of the chapter means

> the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it. An original of a photograph includes the negative or any print therefrom. If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an original.

And OCGA § 24-10-1003 provides: "A duplicate shall be admissible to the same extent as an original unless: (1) A genuine question is raised as to the authenticity of the original; or (2) A circumstance exists where it would be unfair to admit the duplicate in lieu of the original." The lieutenant testified that the photographs were accurate images, captured by a digital camera, of what appeared on D. D.'s cell phone. What appeared on the screen of the cell phone was analogous to a "printout or other output [of the cell phone] readable by sight," and therefore an original within the meaning of OCGA §§ 24-10-1001 (3) and 24-10-1002. See State v. Giacomantonio, 885 NW2d 394, 402 (1) (b) (Wisc. App. 2016) (photographs of text messages complied with best evidence rule; "[a] cell phone is a 'computer or similar device,' the screen shots are

17

'output readable by sight,' and according to testimony, the screen shots reflected the data accurately"). And the digital photographs of what appeared on the screen of the cell phone are duplicates within the meaning of OCGA § 24-10-1003, and admissible to the same extent as the original. Pierce does not argue that the photographs were not an accurate representation of what appeared on D. D.'s cell phone screen. Rather, he challenges the authenticity of the text messages that appeared on the screen, an issue we have addressed above in Division 2 (a).[6]

3. Pierce asserts that Georgia's statutory sentencing scheme for aggravated child molestation is unconstitutional both per se and as applied. He argues that the sentencing scheme violates the Due Process and Equal Protection Clauses of the Georgia Constitution and the United States Constitution, and violates the prohibition against cruel and unusual punishment found in the Eighth Amendment of the United States Constitution and Article I of the Georgia Constitution.

(a) With regard to his due process and equal protection claims, Pierce

---

[6] For the reasons explained in Division 1 (c), Pierce's argument that the photographs constituted improper character evidence is without merit.

points to the interplay between OCGA § 16-6-4 (d) (1) and OCGA § 17-10-6.1.

OCGA § 16-6-4 (d) (1) provides in relevant part:

> [A] person convicted of the offense of aggravated child molestation shall be punished by imprisonment for life or by a split sentence that is a term of imprisonment for not less than 25 years and not exceeding life imprisonment, followed by probation for life, and shall be subject to the sentencing and punishment provisions of Code Sections 17-10-6.1 and 17-10-7.

OCGA § 17-10-6.1 (b) (2) provides that the sentence of a person convicted of aggravated child molestation shall, unless the person is sentenced to life imprisonment, "be a split sentence which shall include a mandatory minimum term of imprisonment of 25 years, followed by probation for life, and no portion of the mandatory minimum sentence imposed shall be suspended, stayed, probated, deferred, or withheld by the sentencing court." OCGA § 17-10-6.1 (c) (1) provides that for a first conviction of a serious violent felony, including aggravated child molestation, see OCGA § 17-10-6.1 (b) (2) (C), "in which the accused has been sentenced to life imprisonment, that person shall not be eligible for any form of parole or early release administered by the State Board of Pardons and Paroles until that person has served a minimum of 30 years in prison." And paragraph (c) (4) of the Code section provides that any sentence

19

imposed for a first conviction "shall be served in its entirety as imposed by the sentencing court and shall not be reduced by any form of parole or early release."

Pierce argues that this sentencing scheme violates his right to due process because it allows a court to impose a term of years

> that could far exceed a person's life expectancy, for example, 300 years, but yet would still theoretically "not exceed life imprisonment." When combined with OCGA § 17-10-6.1 (c) (4), which requires that such defendant serve one hundred percent of the time imposed without any possibility of parole or early release, such a 300-year sentence, if imposed would constitute a de facto life sentence without the possibility of parole.

An identical argument was raised in Merritt v. State, 286 Ga. 650 (690 SE2d 835) (2010), where the defendant challenged as unconstitutional a similar sentencing scheme for rape. Id. at 652. Just as we concluded in Merritt with regard to the rape sentencing statutes, the sentencing scheme here gives fair warning and puts a defendant on notice of the potential sentence that for a first conviction of aggravated child molestation he or she can be sentenced to either life or a split sentence that includes not less than 25 years in prison; that if life is imposed, he or she is not eligible for parole until after having served 30 years in confinement; and that if a term not less than 25 years is imposed, it must be

20

served in its entirety. Such unambiguous notice of the potential punishment for the crime precludes Pierce's "de facto" sentence of life argument. See id. The sentencing scheme here did not violate due process on this ground. See id.[7]

(b) Pierce argues that the aggravated child molestation sentencing scheme violates equal protection because a defendant could "be subjected to maximum terms of imprisonment substantially different than others charged in the same manner with the exact same offenses." Pierce presents the example of an individual sentenced to 50 years of incarceration for a first time conviction who would have to serve every day of the 50-year term, while an individual in the same situation sentenced to life, "a theoretically longer sentence," would be eligible for parole after having served 30 years.

"Where a criminal statute does not discriminate on racial grounds or against a suspect class, equal protection and due process concerns are satisfied if the statute bears a 'reasonable relation to a proper legislative purpose' and is 'neither arbitrary nor discriminatory.'" (Citations and punctuation omitted.) Rooney v. State, 287 Ga. 1, 5 (3) (690 SE2d 804) (2010). OCGA § 16-6-4 (d)

_____

[7] For the same reason, we reject Pierce's assertion that the sentencing scheme for aggravated child molestation is vague and ambiguous.

21

(1) and OCGA § 17-10-6.1 do not discriminate on racial grounds, and defendants sentenced under those Code sections "are neither a suspect class nor a semisuspect class. And while (those statutes) affect[ ] an individual's physical liberty interest, physical liberty, in this sentencing context, is not a fundamental right." (Citations and punctuation omitted.) Id. We therefore apply the most lenient level of judicial review, the "rational basis" test. See Pitts v. State, 293 Ga. 511, 516 (2) (748 SE2d 426) (2013). Under this test,

the claimant must establish that he is similarly situated to members of the class who are treated differently from him. Next, the claimant must establish that there is no rational basis for such different treatment. And because the legislation is presumptively valid, the claimant has the burden of proof as to both prongs.

(Citations and punctuation omitted.) Harper v. State of Ga., 292 Ga. 557, 560 (1) (738 SE2d 584) (2013)

"For equal protection purposes, criminal defendants are similarly situated if they are charged with the same crime." (Citation omitted.) Pitts, supra, 293 Ga. at 516 (2). Pierce complains here of the possibility of a disparity in incarceration time under the statutory scheme for defendants charged with

22

aggravated child molestation, but he "fails to show that any such potential variation in application of the statute is without a rational basis. [Cit.]" Id. As we have held with regard to other sentencing statutes, allowing the court flexibility to fix sentences furthers the goal of individualized treatment at the punishment stage. Such flexibility includes the ability to decide whether under the facts presented a defendant should be sentenced to life or to a split sentence with a term of no less than 25 years, with full knowledge of the minimum period of incarceration required under each option. Moreover, a

> statutory difference in treatment is not to be set aside if any state of facts reasonably may be conceived to justify it; if there is some rational basis for the classification, it does not offend constitutional safeguards merely because the classification is not made with mathematical nicety or because in practice it may result in some inequality.

Id. Pierce has failed to meet his burden of showing that there is no rational basis for the sentencing options including different mandatory incarceration periods for defendants charged with aggravated child molestation.

(c) Pierce asserts that the sentencing scheme for aggravated child molestation "on its face and as applied to him individually," violates the prohibition against cruel and unusual punishment found in both the United

23

States Constitution and the Georgia Constitution.

Pierce argues that the sentencing scheme for aggravated child molestation is unconstitutional per se because the punishment is "grossly out of proportion to the severity of the crime, given the mandatory minimum requirement of 25 years in prison followed by probation for life" and given that no portion of the 25 years may be suspended, probated or paroled. He argues further that under the sentencing scheme, "[a]n adult male defendant in Georgia could be required to spend the remainder of his life in prison, without the possibility of parole, if a consenting male teenager places his mouth on the penis of the adult defendant, without any other aggravating circumstances or harmful conduct." Pierce then compares Georgia's sentencing scheme for aggravated child molestation with the sentencing schemes for the crime in other southern states.

> Traditionally, it is the task of the legislature, not the courts, to define crimes and set the range of sentences. The legislature's choice of sentence is insulated from judicial review unless it is wholly irrational or so grossly disproportionate to the severity of the crime that it constitutes cruel and unusual punishment.

(Citation and punctuation omitted.) Rooney, supra, 287 Ga. at 6. As the United

24

States Supreme Court has explained, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare . . . . [W]e stated that the proportionality principle would come into play in the extreme example if a legislature made overtime parking a felony punishable by life imprisonment." (Citations omitted.) Ewing v. California, 538 U. S. 11, 21 (II) (A) (123 SCt 1179, 155 LE2d 108) (2003). "Severe, mandatory penalties may be cruel, but they are not unusual in the constitutional sense." Harmelin v. Michigan, 501 U. S. 957, 994 (IV) (111 SCt 2680, 115 LE2d 836) (1991).

We hold here that the sentencing scheme, life or a minimum of 25 years to serve, is not so grossly disproportionate to the crime of aggravated child molestation, which involves molestation that physically injures the child or involves an act of sodomy, that would require us to find it "per se" cruel and unusual. See, e.g., United States v. Rolon, 445 Fed. Appx. 314, 332 (II) (H) (11th Cir. 2011) (life imprisonment on drug charges not per se cruel and unusual).

Pierce's "as-applied" argument also fails. He contends that his life sentence with 30 years to be served and the remainder on probation was cruel

and unusual because the evidence showed that the sexual intercourse was not forced, no violence was involved, he did not kidnap or restrain the teens and they were not physically injured, and he had no prior convictions.

> Where, as here, no categorical Eighth Amendment restriction applies, we must in the following manner determine whether a sentence for [life with 30 years to serve] is grossly disproportionate for [Pierce's ] crime[s]. A court must begin by comparing the gravity of the offense and the severity of the sentence. In the rare case in which this threshold comparison leads to an inference of gross disproportionality the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. We have emphasized that it is the rare case in which the threshold inference of gross disproportionality will be met and a rarer case still in which that threshold inference stands after further scrutiny.

(Citations and punctuation omitted.) Jones v. State, 290 Ga. 670, 675 (3) (725 SE2d 236) (2012).

Pierce was charged with six counts of aggravated child molestation, and the evidence showed that he engaged in acts of anal and oral sodomy with two 14-year-old boys. The evidence also showed that he offered M. T. and B. M. prescription medication just prior to engaging in sex acts with them. The trial court sentenced Pierce to a life term on each count of aggravated child molestation to be served *concurrently* to the first count, resulting in a sentence

26

of life with the first 30 years to be served in confinement.

Pierce's argument that his punishment was too severe because the boys were 14 and there was no force involved is unavailing. "A fourteen-year-old boy is not legally able to consent to sexual relations with an adult male." Ray v. State, 259 Ga. 868, 869 (3) (389 SE2d 326) (1990), overruled on other grounds, Wilson v. State, 277 Ga. 195 (586 SE2d 669) (2003). Where the legislature saw fit to carve out a sentencing exception where the victim is at least 13 years old but less than 16, and the defendant is under age 18 and no more than four years older than the victim, it did so. See OCGA § 16-6-4 (d) (2). There is no such sentencing exception for a 31-year-old defendant who commits the offense of aggravated child molestation upon two 14-year-old children.

Under the facts presented here, Pierce's concurrent life sentences with a total of 30 years to serve for multiple acts of aggravated child molestation do not raise even a threshold inference of gross disproportionality. See Jones, supra, 290 Ga. at 676 (3) (concurrent 25-year sentences for child kidnapping do not raise threshold inference of gross disproportionality; "[s]imilarly severe punishments for crimes against children have withstood previous attacks on constitutional grounds" (Citations and punctuation omitted.)); see also

27

Pepe-Frazier v. State, 331 Ga. App. 263, 273 (3) (c) (770 SE2d 654) (2015) (no ineffective assistance for failing to object to life sentence for one act of oral sex with 14-year-old because it did not "raise threshold inference of gross disproportionality"). Accordingly, we reject Pierce's claim that his sentence was cruel and unusual "as applied."

Judgment affirmed. Hines, C. J., Melton, P. J., Benham, Hunstein, Nahmias, Blackwell, Grant, JJ., and Chief Judge Dwayne H. Gillis concur. Peterson, J., disqualified.

Decided October 30, 2017.

OCGA § 24-8-803 (5); constitutional question. Houston Superior Court. Before Judge Lumsden.

Hogue & Hogue, Laura D. Hogue, Susan D. Raymond, for appellant.

George H. Hartwig III, District Attorney, Thomas C. Woody II, Alicia D. Gassett, Assistant District Attorneys, for appellee.