317 Ga. 424
FINAL COPY

S23A0589. SOSEBEE v. THE STATE.

ELLINGTON, Justice.

A Hall County jury found Christopher Sosebee guilty of felony murder in the death of Brian Hayes resulting from a car wreck.[1] Sosebee contends that Count 1, felony murder, and Count 4,

---

[1] The wreck occurred on July 22, 2020. On May 5, 2021, a Hall County grand jury returned an indictment charging Sosebee with felony murder predicated on fleeing and attempting to elude a police officer (Count 1), homicide by vehicle in the first degree, predicated on driving under the influence (Count 2), homicide by vehicle in the first degree, predicated on reckless driving (Count 3), homicide by vehicle in the first degree, predicated on fleeing and attempting to elude a police officer (Count 4), serious injury by vehicle (Count 5), felony fleeing and attempting to elude a police officer (Count 6), driving under the influence of drugs (less safe) (Count 7), reckless driving (Count 8), misdemeanor obstruction of an officer (Count 9), speeding (Count 10), failure to maintain lane (Count 11), driving with expired license (Count 12), affixing plate to conceal or misrepresent identity (Count 13), and improper tires (Count 14). Following a February 2022 trial, a jury found Sosebee guilty on Counts 1, 2, 3, 4, and 6, as well as several of the other offenses not at issue in this appeal. On February 11, 2022, the trial court sentenced Sosebee as a recidivist to serve life in prison without parole on Count 1. The trial court determined that Count 6 merged with Count 1 for purposes of sentencing. The trial court also declared that Counts 2, 3, and 4 were vacated as a matter of law. Sosebee filed a timely motion for a new trial, which he amended on September 15, 2022. The trial court denied Sosebee's motion for a new trial on September 23, 2022. Sosebee filed a timely notice of appeal, and the case was docketed in this Court to the April 2023 term and submitted for a decision on the briefs.

homicide by vehicle in the first degree, which were both predicated on Count 6, fleeing or attempting to elude, defined exactly the same criminal conduct. Sosebee argues that the rule of lenity therefore requires that he be sentenced within the range for homicide by vehicle in the first degree, rather than for felony murder. He also contends that his sentence of life without parole violates the prohibition of cruel and unusual punishment in the Eighth Amendment to the United States Constitution because neither felony murder nor homicide by vehicle in the first degree, when predicated on fleeing and attempting to elude as in this case, requires malice or specific intent to harm, and because the prior felonies that triggered his sentencing as a recidivist were non-violent. For the reasons explained below, we affirm.

The facts relevant to Sosebee's claims of error are not disputed. The record shows the following. On July 22, 2020, a Hall County sheriff's deputy was looking for a black car that had been spray-painted and was missing its front grill, in order to serve arrest warrants on a person who, the day before, had reportedly been

2

driving a vehicle matching that description. The deputy saw an SUV matching that description, called it in, and followed the vehicle while requesting additional officers to assist with a traffic stop. After a few minutes of following the SUV at 45 to 50 mph in a 45-mph zone, the deputy activated his blue lights and siren. The SUV accelerated and pulled away from the patrol car. At a curve, the SUV's right rear tire left the road, then the SUV veered sharply to the left, crossed the oncoming lane, traveled up an embankment, hit some boulders, flipped, landed on top of an approaching truck, and then rolled off. The driver of the truck showed no signs of life when the deputy reached him, and Sosebee's girlfriend, Tiffany Franklin, who had been a passenger in the SUV during the incident, was very badly injured.

Franklin testified about the day of the wreck as follows. She and Sosebee were visiting a friend that day when they saw a police car parked near their friend's house. They left their friend's house with Sosebee driving Franklin's Chevrolet Equinox. When Franklin saw the patrol car's blue lights, she screamed at Sosebee to stop.

Sosebee did not stop; he accelerated. Sosebee said, "[B]aby, I am sorry. I love you." Franklin felt the SUV go off the road, and then it flipped and hit another vehicle. Franklin testified that Sosebee believed he had an outstanding warrant and that, on some date prior to the incident, he told her "that they would have to kill him before he went back to prison." A test of Sosebee's blood after the wreck revealed methamphetamine, at an impairment level, as well as marijuana.

An expert in collision reconstruction with the Georgia State Patrol testified that the SUV was traveling approximately 80 mph in the seconds before the wreck. The speed limit in force at that location was 45 mph.

Count 1 of the indictment charged that Sosebee,

while in the commission of a felony, to wit: Fleeing and Attempting to Elude a Police Officer as alleged in [C]ount 6 of this Indictment, cause[d] the death of Brian Hayes, a human being, by striking said person's vehicle, in violation of [OCGA §] 16-5-1 (c)[.]

Count 4 of the indictment charged that Sosebee,

without malice aforethought, cause[d] the death of Brian Hayes, a human being, through a violation of [OCGA

4

§] 40-6-395, Fleeing and Attempting to Elude, as alleged in [C]ount 6 of this Indictment, in violation of [OCGA §] 40-6-393 (a)[.]

Count 6 of the indictment charged that Sosebee

did willfully fail to bring his vehicle to a stop after having been given an audible and a visual signal, to wit: lights and sirens, to bring his vehicle to a stop by Deputy Shaw, said officer at the time giving such signal, being in uniform prominently displaying his badge of office, and his vehicle being appropriately marked showing it to be an official police vehicle, and did operate his vehicle in excess of 20 miles per hour above the posted speed limit and strike or collide with another vehicle and flee in traffic conditions which placed the general public at risk of receiving serious injuries, in violation of [former] [OCGA §] 40-6-395 (b) (5) (A)[.]

1. Sosebee contends that "as indicted" the statute defining felony murder and the statute defining homicide by vehicle in the first degree impose "different punishments for identical criminal conduct." Sosebee argues that an ambiguity therefore exists between the two statutes and that the trial court erred when it failed to apply the rule of lenity and sentence him to the lesser of the two penalties.

The rule of lenity applies when a statute establishes, or multiple statutes establish, different punishments for the same

5

offense and, consequently, "uncertainty develops as to which penal clause is applicable[.]" *Brown v. State*, 276 Ga. 606, 608 (2) (581 SE2d 35) (2003) (citation and punctuation omitted). See also *Peacock v. State*, 314 Ga. 709, 723 (5) (878 SE2d 247) (2022). The rule of lenity provides that any ambiguity or uncertainty as to the punishment to be imposed in such a case "is resolved in favor of the defendant, who will then receive the lesser punishment." *Peacock*, 314 Ga. at 723 (5) (citation and punctuation omitted). See also *Dixon v. State*, 278 Ga. 4, 7 (1) (d) (596 SE2d 147) (2004) (According to the rule of lenity, when "any uncertainty develops as to which penal clause is applicable, the accused is entitled to have the lesser of [the] two penalties administered." (citation and punctuation omitted)). Importantly, "[t]he rule of lenity is a rule of construction that is applied only when an ambiguity still exists after having applied the traditional canons of statutory construction." *State v. Hanna*, 305 Ga. 100, 102 (2) (823 SE2d 785) (2019) (citation and punctuation

omitted).[2] Therefore, "the rule does not apply when the statutory provisions are unambiguous." *Banta v. State*, 281 Ga. 615, 617 (2) (642 SE2d 51) (2007).

The statutes at issue here are not ambiguous and do not require different punishments for the same conduct. The offense of felony murder under OCGA § 16-5-1 (c) criminalizes causing the death of a human being "in the commission of a felony,"[3] but the offense of homicide by vehicle in the first degree under OCGA § 40-6-393 (a) does not. The latter Code section criminalizes causing the death of another person through the violation of OCGA §§ 40-6-163 (a), 40-6-390 through 40-6-391, or 40-6-395 (a).[4] Pertinent to this

---

[2] See *Green v. State*, 311 Ga. 238, 242 (1) (857 SE2d 199) (2021) ("When presented with a question of statutory interpretation, we begin by examining the statute's plain language, reading the text in its most natural and reasonable way, as an ordinary speaker of the English language would. Thus, when considering the meaning of a statute, we must afford the statutory text its plain and ordinary meaning, viewed in the context in which it appears. If the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (citations and punctuation omitted)).

[3] OCGA § 16-5-1 (c) provides: "A person commits the offense of murder when, in the commission of a felony, he or she causes the death of another human being irrespective of malice."

[4] The 2008 version of OCGA § 40-6-393, applicable at the time of Sosebee's offenses, provides in subsection (a): "Any person who, without malice

7

case, violation of OCGA § 40-6-395 (a) is a misdemeanor.[5] Felony-

---

aforethought, causes the death of another person through the violation of subsection (a) of Code Section 40-6-163, Code Sections 40-6-390 through 40-6-391, or subsection (a) of Code Section 40-6-395 commits the offense of homicide by vehicle in the first degree[.]" OCGA § 40-6-393 was amended effective May 3, 2021, after the date of Sosebee's offenses. See Ga. L. 2021, p. 228 (Act No. 152), § 7. One aspect of the amendment was to include a new offense, reckless stunt driving, among the predicate acts for homicide by vehicle in the first degree set out in OCGA § 40-6-393 (a). See id.; Ga. L. 2021, p. 228, § 6 (adding a new Code section, OCGA § 40-6-390.1).

[5] The 2012 version of OCGA § 40-6-395 (b) (1), applicable at the time of Sosebee's offenses, provides:

> Any person violating the provisions of subsection (a) of this Code section shall be guilty of a high and aggravated misdemeanor and:
>
> (A) Upon conviction shall be fined not less than $500.00 nor more than $5,000.00, and the fine shall not be subject to suspension, stay, or probation, and imprisoned for not less than ten days nor more than 12 months. Any period of such imprisonment in excess of ten days may, in the sole discretion of the judge, be suspended, stayed, or probated;
>
> (B) Upon the second conviction within a ten-year period of time, as measured from the dates of previous arrests for which convictions were obtained to the date of the current arrest for which a conviction is obtained, shall be fined not less than $1,000.00 nor more than $5,000.00, and the fine shall not be subject to suspension, stay, or probation, and imprisoned for not less than 30 days nor more than 12 months. Any period of such imprisonment in excess of 30 days may, in the sole discretion of the judge, be suspended, stayed, or probated; and for purposes of this paragraph, previous pleas of nolo contendere accepted within such ten-year period shall constitute convictions; and
>
> (C) Upon the third or subsequent conviction within a ten-year period of time, as measured from the dates of previous arrests for which convictions were obtained to the date of the current arrest for which a conviction is obtained, shall be fined not less than $2,500.00 nor more than

level fleeing under former OCGA § 40-6-395 (b) (5) (A), which was charged in Count 6, has elements in addition to those required to prove a violation of misdemeanor fleeing under OCGA § 40-6-395 (a).[6] As a greater offense, felony fleeing is a distinct offense from a

---

$5,000.00, and the fine shall not be subject to suspension, stay, or probation, and imprisoned for not less than 90 days nor more than 12 months. Any period of such imprisonment in excess of 90 days may, in the sole discretion of the judge, be suspended, stayed, or probated; and for purposes of this paragraph, previous pleas of nolo contendere accepted within such ten-year period shall constitute convictions.

We note without comment that, effective July 1, 2022, a fourth or subsequent conviction of fleeing under OCGA § 40-6-395 (a) is a felony. See Ga. L. 2022, p. 100 (Act No. 646), § 1; OCGA § 40-6-395 (b) (1) (D). Similarly, reckless stunt driving is a felony for a fourth or subsequent conviction in a ten-year period of time. See Ga. L. 2021, p. 228, § 6; OCGA § 40-6-390.1 (a) (4). In addition, a fourth or subsequent conviction, within a ten-year period of time, of driving under the impairing influence of alcohol or drugs under OCGA § 40-6-391 is a felony. See OCGA § 40-6-391 (c) (4).

[6] The 2012 version of OCGA § 40-6-395 (b) (5) (A), applicable at the time of Sosebee's offenses, provides:

Any person violating the provisions of subsection (a) of this Code section who, while fleeing or attempting to elude a pursuing police vehicle or police officer:

(i) Operates his or her vehicle in excess of 20 miles an hour above the posted speed limit;

(ii) Strikes or collides with another vehicle or a pedestrian;

(iii) Flees in traffic conditions which place the general public at risk of receiving serious injuries;

(iv) Commits a violation of paragraph (5) of subsection (a) of Code Section 40-6-391; or

(v) Leaves the state

shall be guilty of a felony punishable by a fine of $5,000.00 or

violation of OCGA § 40-6-395 (a) that is specified as one of the predicate offenses of homicide by vehicle in the first degree. But, as in this case, the same set of facts that gives rise to a greater offense also gives rise to an included offense. See *Soto v. State*, 303 Ga. 517, 521 (2) (b) (813 SE2d 343) (2018); OCGA § 16-1-6 (1).

As explained above, the rule of lenity applies only when there are different potential punishments for the same conduct, that is, where differently punished offenses have the same statutory elements. See *Sillah v. State*, 315 Ga. 741, 755 (5) (b) (883 SE2d 756) (2023); *Brown*, 276 Ga. at 608-609 (2). In regard to felony murder and fleeing in particular, this Court concluded in *State v. Tiraboschi*, 269 Ga. 812 (504 SE2d 689) (1998), that "when the General Assembly created the felony level crime of fleeing or attempting to elude, it knew that a violation of [former] OCGA § 40-6-395 (b) (5) (A) would expose an accused to a charge of felony murder when

imprisonment for not less than one year nor more than five years or both.

Effective July 1, 2022, this subparagraph was redesignated as subsection (c), and additional aggravating factors were included. See Ga. L. 2022, p. 100, § 1.

death resulted." Id. at 814. In *Tiraboschi*, we rejected the argument that an indictment charging a defendant with homicide by vehicle in the first degree and felony fleeing and attempting to elude a police officer could not also charge the defendant with felony murder predicated on felony fleeing. Id. See also *Chester v. State*, 262 Ga. 85, 87-88 (2) (b) (414 SE2d 477) (1992) (rejecting argument that the vehicular homicide statute precludes a murder charge in vehicular deaths; holding that malice murder and vehicular homicide are offenses of the same nature that differ only in degree, in that malice murder requires proof of malice, and vehicular homicide does not; and affirming denial of special demurrer to a count of malice murder).

In this case, even though misdemeanor fleeing and attempting to elude is a sufficient predicate for vehicular homicide in the first degree, the way that the State drew up the indictment charging Sosebee with vehicular homicide in the first degree in Count 4 required the State to prove the statutory elements of felony fleeing to prove that count. That does not change the fact that, as a matter

of statutory interpretation, felony murder predicated on felony fleeing and attempting to elude is a different offense than homicide by vehicle in the first degree and, therefore, there is no ambiguity between the statutory definitions of felony murder and homicide by vehicle in the first degree predicated on a violation of OCGA § 40-6-395 (a). As we have explained, "that a single act may, as a factual matter, violate more than one penal statute does not implicate the rule of lenity." *Smallwood v. State*, 310 Ga. 445, 452 (3) (851 SE2d 595) (2020) (citation and punctuation omitted). In the absence of a textual ambiguity between the statutes at issue, our review of Sosebee's rule-of-lenity argument must end, despite the way the offenses were indicted in his case. The rule of lenity simply has no application in this case, and this claim of error fails. See *Peacock*, 314 Ga. at 723 (5); *Banta*, 281 Ga. at 618 (2); cf. *Dixon*, 278 Ga. at 7 (1) (d) (holding that rule of lenity required that the defendant be sentenced for misdemeanor statutory rape under former OCGA § 16-6-3 (b), rather than felony aggravated child molestation under OCGA § 16-6-4 (a), because both statutes criminalized an act of

sexual intercourse between a 14- or 15-year-old victim and a defendant who was no more than three years older than the victim and the Code sections prescribed different punishments for the same conduct).

2. Sosebee contends that the trial court imposed a sentence in violation of the prohibition of cruel and unusual punishment in the Eighth Amendment to the United States Constitution. Specifically, he argues that life without parole on a conviction for offenses that do not require proof of malice or specific mens rea as to harm is unconstitutionally excessive. Similarly, he argues that life without parole under a recidivist sentencing statute is unconstitutionally excessive where all of the prior felonies that trigger the enhanced punishment were non-violent.[7]

As an initial matter, Sosebee's sentence is within the statutory

---

[7] The trial court sentenced Sosebee to recidivist punishment pursuant to OCGA § 17-10-7 (a) and (c) based on the following prior convictions: (1) 2017 convictions for possession of methamphetamine and forgery in the second degree; (2) a 2014 conviction for theft by taking; (3) a 2010 conviction for possession of alprazolam; (4) another 2010 conviction for possession of alprazolam; (5) a 2013 conviction for entering an automobile or other motor vehicle; and (6) a 2016 conviction for entering an automobile or other motor vehicle.

range for felony murder when the defendant is sentenced as a recidivist under OCGA § 17-10-7 (a) and (c).[8] "The legislature's choice of sentence is insulated from judicial review unless it is wholly irrational or so grossly disproportionate to the severity of the crime that it constitutes cruel and unusual punishment" which is prohibited by the Eighth Amendment of the United States Constitution. *Pierce v. State*, 302 Ga. 389, 401 (3) (c) (807 SE2d 425) (2017) (citation and punctuation omitted). "[C]ourts must defer to the legislature in determinations of sentencing parameters unless a

---

[8] OCGA § 16-5-1 (e) (1) provides: "A person convicted of the offense of murder shall be punished by death, by imprisonment for life without parole, or by imprisonment for life."

OCGA § 17-10-7 provides, in pertinent part:

(a) . . . [A]ny person who, after having been convicted of a felony offense in this state . . . commits a felony punishable by confinement in a penal institution shall be sentenced to undergo the longest period of time prescribed for the punishment of the subsequent offense of which he or she stands convicted, provided that, unless otherwise provided by law, the trial judge may, in his or her discretion, probate or suspend the maximum sentence prescribed for the offense.

. . .

(c) . . . [A]ny person who, after having been convicted under the laws of this state for three felonies . . . commits a felony within this state shall, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

14

sentence is so overly severe or excessive in proportion to the offense as to shock the conscience." *Winslow v. State*, 315 Ga. 133, 143 (3) (880 SE2d 530) (2022) (citation and punctuation omitted). See *Pierce*, 302 Ga. at 401-403 (3) (c) (rejecting both facial and as-applied Eighth Amendment challenges to a sentencing scheme).

A court determines whether a sentence is grossly disproportionate to the crime committed first by comparing the severity of the sentence and the gravity of the offense, including the statutory elements of the offense and "the particular circumstances of the crime committed as shown by the record." *Sillah*, 315 Ga. at 755 (5) (b). See also *Conley v. Pate*, 305 Ga. 333, 337 (3) (825 SE2d 135) (2019) ("[W]e look to the underlying facts of the offense to determine whether a given sentence is grossly disproportionate" to the crime.).

> In the rare case that this threshold comparison leads to an inference of gross disproportionality, a court next compares the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions.

*Sillah*, 315 Ga. at 755 (5) (b) (citation and punctuation omitted).

15

With regard to recidivist sentencing in particular, the Supreme Court of the United States explained that "the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction." *Rummel v. Estelle*, 445 U. S. 263, 285 (III) (100 SCt 1133, 63 LE2d 382) (1980). In *Rummel*, a case where the defendant's three prior felony convictions were non-violent thefts in small amounts,[9] the Supreme Court held that a recidivist statute providing a life sentence for a third felony conviction did not violate the Eighth Amendment proscription against cruel and unusual punishment. Id. See also *Ortiz v. State*, 266 Ga. 752, 753-754 (2) (a) (470 SE2d 874) (1996) (holding that a sentence of life imprisonment without possibility of parole under OCGA § 17-10-7 (b) does not constitute cruel and unusual punishment under the Eighth

---

[9] The defendant had pleaded guilty to fraudulent use of a credit card to obtain $80 worth of goods or services, passing a forged check in the amount of $28.36, and felony theft by obtaining $120.75 by false pretenses. *Rummel*, 445 U. S. at 266-267 (I).

16

Amendment).

In this case, the evidence showed that Sosebee willfully put his girlfriend, the motoring public, and other innocent bystanders at risk of grave injury or death simply to avoid a traffic stop. Under the circumstances, we cannot say that Sosebee's sentence is so overly severe or excessive in proportion to his offenses as to shock the conscience. Sosebee's claim of error under the Eighth Amendment therefore fails at the threshold comparison of the severity of the sentence and the gravity of the offense. See *Winslow*, 315 Ga. at 143 (3) (concluding that punishing the possession of child pornography under OCGA § 16-12-100 (f) (1) the same as offenses involving the sale, distribution, or manufacturing of child pornography did not arise to a violation of the prohibition against cruel and unusual punishment in the Eighth Amendment to the United States Constitution); *Pate*, 305 Ga. at 336-338 (3) (concluding that, despite the youth of the defendant at the time of the offense, the sentence of 20 years' imprisonment for statutory rape "[did] not meet even the threshold inference of gross disproportionality" so as to constitute

cruel and unusual punishment under the Eighth Amendment to the United States Constitution, where the 13-year-old victim repeatedly refused the 15-year-old defendant's demands for sex and submitted only after the defendant brandished a knife and threatened to kill the victim's father, who was asleep in an adjoining bedroom).[10]

---

[10] Cf. *Bradshaw v. State*, 284 Ga. 675, 679 (2) (b), 683 (4) (671 SE2d 485) (2008) (holding that a mandatory sentence of life imprisonment imposed under OCGA § 42-1-12 (n) for the defendant's second failure to register as a convicted sex offender constituted cruel and unusual punishment, considering that the failure to update information on the sexual offender registry involves "neither violence nor threat of violence to any person" and, as such, "is a passive felony that neither caused nor threatened to cause harm to society"; that violent crimes including voluntary manslaughter, aggravated assault with intent to murder, rape, or rob, or aggravated battery may result in a sentence of as little as one year under Georgia law, a far lesser punishment than life imprisonment; and that Georgia's mandatory punishment of life imprisonment is the clear outlier when compared to other states' sentencing parameters for the same offense) (citation and punctuation omitted); *Humphrey v. Wilson*, 282 Ga. 520, 526-532 (3) (c)-(g) (652 SE2d 501) (2007) (holding that a sentence of ten years in prison without the possibility of parole followed by one year of probation for aggravated child molestation under former OCGA § 16-6-4 constituted cruel and unusual punishment, where the defendant was 17 years old at the time of the crime, the victim was 15 years old, and the sexual act involved the victim willingly performing oral sex on the defendant, considering that the conduct was reduced to a misdemeanor under a subsequent amendment to the Code section, based on the General Assembly's changed view of the appropriate punishment for consensual teenage oral sex; that violent crimes including voluntary manslaughter, involuntary manslaughter, aggravated assault with intent to kill, or aggravated battery may result in a sentence of as little as one year under Georgia law; that molestation of a young child may result in a sentence of as little as five years, and even forcible rape may result in a sentence of as little as ten years; and that most other states either would not punish oral sex between willing teenagers at all or would

*Judgment affirmed. All the Justices concur.*

Decided October 11, 2023.

Murder. Hall Superior Court. Before Judge Deal.

*Jake A. Shapiro, Christopher van Rossem*, for appellant.

*Lee Darragh, District Attorney, Kelley M. Robertson, Anna V. Fowler, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.

*V. Natasha Perdew Silas; J. Ryan Brown Law, Hunter J. Rodgers; Amagi Law, Matthew P. Cavedon; The Bullard Firm, Brandon A. Bullard*, amici curiae.

---

punish it as a misdemeanor, as under Georgia's amended law, and those states that retain a felony designation for such conduct do not impose a minimum punishment nearly as severe as ten years in prison with no possibility of probation or parole).